## A. & M. GREGOS, INC.
### v.
### Robert J. ROBERTORY, Head, Contract Procedure Branch, Naval Facilities Engineering Command, et al.
### Civ. A. No. 74–1215.

United States District Court,
E. D. Pennsylvania.

Oct. 25, 1974.

---

Marvin W. Factor, Weinstein & Factor, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U.S. Atty., Paul E. Holl, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

On May 14, 1974, plaintiff A. & M. Gregos, Inc. filed this action against Robert J. Robertory, head of the Contract Procedure Branch of the Naval Fa-cilities Engineering Command, A. D. Horne, Jr., director of the Contract Division of the Command, Captain Charles Heid, commander of the Northern Division of the Command, and John W. Warner, Secretary of the Navy. The complaint charges violations of the Armed Services Procurement Act,[1] the regulations adopted pursuant to that Act, and the due process clause of the Fifth Amendment as a result of alleged improprieties in the acceptance of bids for alteration and repair work to be performed at the Naval Air Station, located at Lakehurst, New Jersey.[2] Gregos claims that its bids on the two relevant projects were lowest and that the acts of defendants in awarding the contracts to the second lowest bidders were arbitrary and without reasonable basis. Jurisdiction is asserted under 28 U.S.C. § 1331,[3] 28 U.S.C. §§ 2201, 2202,[4] 28 U.S.C. § 1361,[5] and the Administrative Procedure Act, 5 U.S.C. § 702.[6] Specifically, injunctive relief was sought requiring defendants to approve plaintiff's bids and restraining them from interfering with its asserted rights as low bidder.[7]

On May 15, 1974, we granted plaintiff's motion for a temporary restraining order to preserve the status quo

1. 10 U.S.C. § 2301 et seq.

2. Specifically, plaintiff claims illegality involving two solicitations for contracts. The first, number N62472–74–B–0070, invited bids for alteration and repairs of Industrial Spaces and Equipment Installation of Buildings 148, 149, 124, and 333 at the Naval Air Station. The second, number N62472–74–B–0071, invited bids for alteration and repair of Administrative Spaces and Computer Installation, Buildings number 5, 26, 120, and 129 at the Naval Air Station. (Complaint, allegation 4).

3. Section 1331 vests original jurisdiction in the federal district courts for all actions involving a federal question where the amount in controversy exceeds $10,000.

4. Section 2201 allows any federal court to grant a declaratory judgment in any case or controversy otherwise within its jurisdiction. Section 2202 allows the court to grant any "further necessary or proper relief based on a declaratory judgment." Neither of these sections creates an independent source of jurisdiction but merely an additional remedy where jurisdiction is already present. Ragoni v. United States, 424 F.2d 261 (C.A.3, 1971); Framlau v. Dembling, 360 F.Supp. 806 (E.D.Pa.1973). However, since there is appropriate jurisdiction under § 1331, we need not concern ourselves with the fact that plaintiff has erroneously attempted to ground jurisdiction on these sections.

5. "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

6. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

7. Section 2305 of the Armed Services Procurement Act states that awards will be made to "the responsible bidder whose bid conforms to the invitation and will be the most advantageous to the United States, price and other factors considered."

pending the hearing on plaintiff's motion for a preliminary injunction. However, after presentation of evidence on the motion for preliminary injunction on May 21–23, 1974, we denied that motion with the conclusion "that there is little likelihood that the plaintiff will prevail on the merits on final hearing."[8]

Defendants have moved to dismiss the complaint on five grounds: (1) failure to exhaust administrative remedies; (2) the controversy is moot; (3) plaintiff has an adequate remedy at law making injunctive relief inappropriate; (4) the relief sought is inappropriate because it would compel federal officers to perform a discretionary act; (5) failure to join a party.

For the reasons which follow, we have concluded that there is no basis for dismissal of the complaint. However, we shall order that plaintiff join as defendants in this action the two companies awarded the disputed contracts.

I

■ At the outset, one preliminary matter warrants attention. Defendants, in a supplemental memorandum, have argued that a motion to dismiss may be treated as a motion for summary judgment where there are no genuine issues of fact in dispute. Defendants have cited Standard Oil Co. of Texas v. Lopeno Gas Co., 240 F.2d 504 (C.A. 5, 1957), for the proposition that:

> "It is settled beyond controversy that if, at the hearing on an application for preliminary injunction, the evidence shows clearly that the plaintiff has not stated a claim upon which relief can be granted and cannot state such a claim, the court should dismiss the plaintiff's complaint. * * * That long established practice is akin to the more modern practice of grant-

ing a summary judgment when there is no genuine issue as to any material fact." *Id.* at 510.

Defendants claim that the hearing on the preliminary injunction demonstrated that there is no issue of fact to be determined and that, therefore, the case is ripe for summary judgment. They argue that one of our findings at that hearing necessitates the conclusion that plaintiff has failed to state a claim upon which relief can be granted and that summary judgment should accordingly be entered in defendants' favor. Defendants rely on our statement at the time we denied plaintiff's motion for a preliminary injunction that "it is impossible to say that the two reports [which the government reviewed in determining whether Gregos was a 'responsible' bidder] did not provide a rational basis for determining that the plaintiff did not fulfill the satisfactory performance standard."[9]

Defendants have misconstrued our finding. At the hearing on the motion for a preliminary injunction, we were concerned only with whether plaintiff had met its burden in establishing irreparability of harm and the likelihood of prevailing on the merits at the final hearing. We concluded, on the basis of the evidence then before us, that plaintiff had failed to fulfill the heavy burden of persuading us that it would be likely to prove at the final hearing that the defendants' refusal to award the contracts had "no rational basis."[10] Our statement was meant solely to express our feeling *at that time* that we could not say that plaintiff was likely to succeed on the merits at trial. We did not intend to foreclose from plaintiff the opportunity at a later date to present all its evidence in an effort to persuade us of the illegality of defendants' actions.

---

8. Transcript of Hearing on Plaintiff's Motion for Preliminary Injunction at 217–18.

9. Transcript at 218.

10. The "rational basis" test for determining whether the rejection of a bid is valid was based on the case of M. Steinthal & Co. v.

Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971), in which it was stated that "[t]he court must refrain from judicial intervention into the procurement process unless the actions of the executive officials are without any rational basis." *Id.* at 1306.

Indeed, it would have been inappropriate for us to draw such a conclusion on the basis of the limited record then available.

## II

■ Turning now to the specific defenses outlined in defendants' motion to dismiss the complaint, we are faced first with the argument that plaintiff should be compelled to pursue its administrative remedies before seeking relief in the district court. We have concluded that there is no requirement that plaintiff exhaust administrative remedies nor shall we, in our discretion, impose one in this case.

The Armed Services Procurement Regulations [11] suggest two possible channels through which a disappointed bidder may protest an award. First, he may file a protest with the contracting officer who shall notify the protestor "in writing of the final decision on the written protest." Alternatively, he may protest to the Comptroller General of the United States in accordance with General Accounting Office Regulations.[12] While it is uncertain whether the first remedy was pursued by plaintiff in this case, it does seem clear that the second avenue for review was ignored. Thus, we are squarely presented with the issue of whether exhaustion of administrative remedies is a prerequisite for a disappointed bidder to maintain suit in the district court.

We begin by noting that nowhere in the relevant regulations are these procedures made mandatory. The Armed Services Procurement Regulations employ mandatory language only in describing the procedure necessary to lodge the protest and the procedure required of the reviewing officer. There is no suggestion in the regulations themselves that failure to file a protest with the contracting officer will be deemed a waiver of any right to protest the award in a judicial proceeding.

Similarly, the language adopted in the General Accounting Office Regulations is permissive rather than mandatory:

> "Any interested party wishing to protest the * * * award of a contract * * * may do so by a telegram or letter to the General Counsel, General Accounting Office * * *." 4 C.F.R. § 20.1(a).

Procedures required by the regulations involve only the timing of the protest and the manner in which the G.A.O. is to consider the protest. Again, there is no reason to believe that these regulations contemplate that failure to protest to the G.A.O. constitutes waiver of the right to seek judicial review.

Nor can we find in other decisions involving contract award disputes a requirement that an unsuccessful bidder seek administrative review as a prerequisite to judicial review. In the leading case of Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), the court denied that an aggrieved bidder must first pursue administrative review of its protest:

> "* * * [W]e fail to understand appellee's argument that one is required to seek review in the General Accounting Office in order to meet the requirements of the exhaustion doctrine. While this may serve as a useful alternative procedure under certain circumstances, it is not a prerequisite to court review. The district court will have the benefit of the record upon which the Comptroller General would rely. No additional findings of fact would be made and no hearings would be held; there would therefore be no additional groundwork laid for the court to review." *Id.* at 876.

Nor can we find in two major decisions since Scanwell any requirement that an unsuccessful bidder must exhaust administrative remedies before seeking judicial vindication.[13]

---

11. ASPR § 2–407.8; 32 C.F.R. § 2.407–8.

12. 4 C.F.R. § 20.

13. M. Steinthal & Co. v. Seamans, *supra*; Wheelabrator Corp. v. Chafee, 147 U.S.App. D.C. 238, 455 F.2d 1306 (1971). *But see*

An important case in this Circuit bearing on this issue is Merriam v. Kunzig, 476 F.2d 1233 (C.A. 3), cert. denied sub nom. Gateway Center Corp. v. Merriam, 414 U.S. 911, 94 S.Ct. 233, 38 L. Ed.2d 149 (1973). In that case, the unsuccessful bidder on a bid to furnish leasehold office space to the General Services Administration sought to have the award set aside. The Court of Appeals held that the district court had erred in dismissing the complaint for lack of standing but left open the possibility that the lower court might impose a rule requiring exhaustion of administrative remedies. *Id.* 476 F.2d at 1244.

Thus, we must consider whether, despite the lack of any previously established rule requiring exhaustion in this situation, we should, in our discretion, refuse to decide the merits of this case because the plaintiff did not seek administrative review of its protest. We have concluded that we will not impose any exhaustion rule.

We begin by noting that there is no question that the General Accounting Office brings considerable expertise to the area of contract awards. The role of the G.A.O. in procurement protests has been praised at length in Wheelabrator Corp. v. Chafee, 147 U.S.App. D.C. 238, 455 F.2d 1306, 1313–1317 (1971). And in Schoonmaker v. Resor, 144 U.S.App.D.C. 250, 445 F.2d 726 (1971), the district court was chided for failing to give adequate weight to the conclusions of the Comptroller General.

However, as noted in Merriam, "no statute has made the GAO remedy exclusive, or its determination final." 476 F.2d at 1242. In M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F. 2d 1289, 1305 (1971), the court noted that:

"The GAO's decision is not necessarily dispositive * * * and we take occasion to point out that there certainly may be instances where the District Court will find procurement

ABC Management Services, Inc. v. Clements, 378 F.Supp. 340 (C.D.Cal.1973).

illegality that the GAO failed to recognize * * *.

" * * * The courts are properly concerned that the procurement activities of the Government be carried out in accordance with the applicable statutes and agency regulations * * *."

Thus even a G.A.O. decision would not allow us to avoid our responsibility to make a further decision should an unsuccessful bidder seek judicial review. It would be our duty at that point to conduct a full fact-finding hearing and any G.A.O. determination would not be conclusive.

Furthermore, the issue before us in this case is not one so complex as to lead us to seek administrative expertise in aid of our decision. The central issue is whether or not the Navy acted without any rational basis in determining that Gregos was a nonresponsible bidder. We have already stated that "judicial interference with the procurement process should be exercised with great circumspection and restraint" and that even if the agency decision is shown to be without rational basis, a court may nonetheless withhold relief in its discretion.[14] Only clear and convincing proof would persuade us to grant relief in plaintiff's favor. If such proof is available, there seems no reason to require the plaintiff first to seek review by the G.A.O., where there are no procedures for a full-scale hearing such as would be available in the district court. We are confident that evidence bearing on the issue of responsibility will not be so technical or complex that we would be unable to reach a firm conclusion as to whether plaintiff had met its heavy burden of persuasion.

Finally, we note that there is, at this time, no administrative remedy left for plaintiff to exhaust. The G.A.O. regulations require that a protest be filed within five days after the basis for protest is known. That period has passed

14. Transcript at 218. *See also* M. Steinthal & Co. v. Seamans, *supra*, 455 F.2d at 1301.

long ago. While this fact alone would not affect our decision if we had concluded that there were other good reasons to require exhaustion as a prerequisite to suit, it would seem particularly harsh in this case to foreclose judicial review for failure to seek administrative review no longer available, when that administrative remedy was only permissive rather than mandatory.

We do not suggest that there may not arise some procurement controversies so complex that a district court should decline to consider them until an administrative agency has completed its review. However, where, as here, the issues are relatively clear, the reviewing agency would not have compiled a complete record for us simply to review, no mandatory procedures have been bypassed, and no present remedy other than judicial review is available, we do not feel that we should impose a requirement of exhaustion of administrative remedies.

### III

■ Three of the remaining grounds for dismissal asserted by defendants can be easily disposed of. Defendants claim that the controversy is moot because the disputed awards have already been granted to the second lowest bidders. Further they argue that injunctive relief is inappropriate because plaintiff has an adequate remedy at law. Finally, defendants assert that mandamus is an inappropriate remedy because the award of a contract is a discretionary, not a ministerial, act.

We need pass no judgment on these claims at this time because, even if true, defendants would not be entitled to dismissal of plaintiff's complaint. Defendants have overlooked the fact that plaintiff has sought a declaratory judgment under 28 U.S.C. § 2201 in addition to its claim for injunctive relief. While the request for a declaratory judgment is rather inartfully set out, appearing as it does in allegation 3 of the complaint which relates to our jurisdiction,[15] we are required to construe the complaint liberally. Plaintiff's prayer that we "award such other and further relief as this Court deems proper and just" can be interpreted to encompass its previous reference to the declaratory relief. Even conceding *arguendo* that injunctive relief and mandamus are inappropriate because the contract has already been awarded, or because plaintiff has an adequate remedy at law, or because defendants' duties are discretionary, the request for a declaratory judgment would still remain since the underlying controversy in this case (whether the government's determination that Gregos was nonresponsible was without rational basis) is certainly not moot. Defendants' arguments for dismissal on these grounds should be reserved for trial, if we are still faced then with the issues of injunctive relief and mandamus.

### IV

■■ Defendants' final ground for dismissal is that plaintiff has failed to join a party under Rule 19 of the Federal Rules of Civil Procedure. An affidavit filed in support of the motion to dismiss[16] demonstrates that the controverted awards have been granted to the second lowest bidders.[17] Defendants argue that these successful bidders must be joined as parties. We have concluded that there is merit in defendants' claim.

Rule 19(a) states that:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in this action if

15. See note 4 *supra*.

16. In considering a motion to dismiss on grounds which relate to the court's jurisdiction, as opposed to the defense of failure to state a claim upon which relief can be granted, we may rely on affidavits and other material outside the pleadings. *See, e. g.*, Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947).

17. The successful bidders were the Daniel J. Keating Co. and C. W. C. Associates, Inc.

\* \* \* (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest."

The companies to whom the disputed contracts were awarded certainly can claim an interest relating to the subject matter of this action. It is also clear that disposition of this action *may* impair their ability to protect that interest. If Gregos prevails on its claim that the government acted without rational basis in refusing to award it the contracts, these successful bidders may be denied the right to complete performance of the contracts.

Plaintiff correctly notes that the successful bidder was not before the court in Merriam v. Kunzig, *supra.* However, the opinion in Merriam makes no mention of the issue of failure to join a party. Instead, the Court of Appeals was concerned only with the issue of standing. Therefore, it cannot be said that Merriam constitutes a controlling precedent on this issue.

While we agree with defendants that plaintiff has failed to join a necessary party, we cannot agree that the appropriate response is dismissal of the complaint. Rule 19(a) states that if a necessary party has not been joined, "the court shall order that he be made a party." If joinder is impossible, the court may then "determine . . . in equity and good conscience" whether the action should be dismissed or continued without the necessary party. Rule 19(b). Since no attempt was made here to join the successful bidders as parties, it would be error for us to dismiss the complaint at this time. Ferguson v. Thomas, 430 F.2d 852 (C.A.5, 1970).

Therefore, we shall order that plaintiff within twenty days join as party-defendants in this case the two companies awarded the contracts, Daniel J. Keating Co. and C.W.C. Associates, Inc. Defendants' motion to dismiss the complaint will be denied.