**A. & M. GREGOS, INC.**

v.

**Robert J. ROBERTORY et al.**

**Civ. A. No. 74–1215.**

United States District Court,
E. D. Pennsylvania.

Feb. 17, 1976.

Marvin W. Factor, Weinstein & Factor, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Paul E. Holl, Asst. U. S. Atty., Philadelphia, Pa., for Government defendants.

F. Warren Jacoby, Jacoby, Donner & Jacoby, Philadelphia, Pa., for Daniel J. Keating Co.

Alan J. Davis, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for C. W. C. Assoc.

### MEMORANDUM

JOSEPH S. LORD, III, Chief Judge.

We may award attorney fees to the prevailing party in an action where his opponents have pursued a claim or defense in bad faith, vexatiously, or oppressively.[1] In this case, defendants Daniel J. Keating Co. and C. W. C. Associates, Inc. have moved that we take the unusual step of requiring that plaintiff, a non-resident corporation, post security for costs and expenses, including attorney fees. Unfortunately, we have concluded that plaintiff's conduct in the prosecution of this case demands that we grant defendants' motion.

To understand the necessity for this requirement we must detail the history of this case. Our earlier opinion at 384 F.Supp. 187 (E.D.Pa.1974) should be examined for a fuller account, but some of the more salient facts must be reiterated. On May 14, 1974, plaintiff filed a complaint charging that the government defendants had improperly awarded contracts for alteration and repair work to be performed at the Naval Air Station at Lakehurst, New Jersey. The complaint alleged that, although plaintiff

---

1. *See Alyeska Pipeline Service Co. v. The Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, 154 (1975); *F. D. Rich, Inc. v. United States for the Use of Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); 6 J. Moore, *Federal Practice* ¶ 54.77[2] (2d ed. 1975).

was the lowest bidder for both these contracts, the government defendants had bypassed plaintiff's bids and had arbitrarily awarded the contracts to the second lowest bidders. It is important to note that plaintiff did not join the two companies who were awarded the contracts (Keating and C. W. C.) in this first complaint.

We denied plaintiff's motion for a preliminary injunction against the government defendants on May 23, 1974, noting "that there is little likelihood that the plaintiff will prevail on the merits on final hearing." The government then moved to dismiss the action citing several bases, primarily the failure to exhaust administrative remedies and the failure to join indispensable parties, *i. e.,* Keating and C. W. C. Plaintiff opposed the motion, arguing that there was no failure to exhaust and further arguing that the successful bidders were not necessary to the action. We denied the motion to dismiss, but, having concluded that the successful bidders were indispensable, we ordered that plaintiff join the Daniel J. Keating Co. and C. W. C. Associates, Inc. *A & M Gregos Co., Inc. v. Robertory,* 384 F.Supp. 187 (E.D.Pa.1974).

On November 11, 1974, pursuant to our order, plaintiff filed an amended complaint joining the two companies as defendants. Other than the addition of these parties, the amended complaint was identical to the original complaint.

On January 14, 1975, plaintiff moved for leave to file a second amended complaint. We granted this motion over the objection of the company defendants. The central allegation of the second amended complaint is paragraph 27:

"At a time presently unknown to Plaintiff, but upon information and belief, beginning at or about the time of the Navy's issuance of solicitations to bid on Projects 0070 and 0071, and continuing up to the present time, Defendants have engaged in a course of conduct and conspiracy to deprive Plaintiff of its right to the award of the contracts, pursuant to which Navy Defendants have, *inter alia;*

"(a) Permitted their decision with respect to the award of the contracts to be based on the impermissible influences of Defendant, Daniel J. Keating Company and Defendant C. W. C. Associates, Inc., and;

"(b) Falsely stated the reasons that they refused to award the contracts to Plaintiff."

On March 25, 1975, we held a pretrial conference in chambers. At that time, counsel for company defendants objected strenuously to many of plaintiff's interrogatories and requests for production of documents. Counsel for company defendants argued that the discovery sought was unduly burdensome and that plaintiff was pursuing its conspiracy allegation in bad faith. When we asked counsel for plaintiff what factual basis, if any, he knew of for his claim, he stated that it was based on statements made to him in May, 1974 by a materialman of a subcontractor of C.W.C. We then ordered that counsel for plaintiff depose the subcontractor and materialman and we stayed all further discovery pending those depositions.

Counsel for plaintiff has conceded that the depositions do not provide factual substantiation for plaintiff's conspiracy allegation, although he still maintains that there was a conspiracy and that the depositions do not prove otherwise.

We are left, therefore, with a conspiracy allegation for which, in twenty months since the institution of the suit and one year since the filing of the second amended complaint, plaintiff has been unable to adduce any factual support whatever. Counsel's claim that a conversation with the materialman in May, 1974 alerted him to the alleged conspiracy is suspect when it is noted that as late as November, 1974 plaintiff opposed joinder of the company defendants. Nor is there any explanation for the failure of plaintiff to allege a conspiracy until January, 1975 nor for counsel's failure to depose the materialman until April, 1975, and then only at our order.

We are unwilling to say that plaintiff may not eventually succeed in proving its allegations. We believe that plaintiff should be allowed the wide use of discovery in its attempt to uncover facts which will support its claim. However, we cannot but observe that, at this juncture, it appears that there is no merit to the charge of conspiracy and that plaintiff is prosecuting this claim in bad faith.

Having concluded that there is good reason to believe that defendants will ultimately succeed in establishing that plaintiff should be held responsible for the payment of costs and expenses, including attorney fees, we are left with the issue of whether we may at this point require that plaintiff post security for these amounts. Plaintiff correctly asserts that there is no precedent for the posting of security for expenses. However, our local rule 38(a) states:

> "In every action in which the plaintiff was not a resident of the Eastern District of Pennsylvania at the time suit was brought * * * an order for security for costs may be entered * * *."

Since plaintiff is not a resident of this district, this rule is clear authority for ordering security for costs, although not for expenses.

Even in the absence of this rule, however, we would still be able to require the posting of security for costs "in such a manner as will facilitate the just determination of the action." 6 J. Moore, *Federal Practice* ¶ 54.73 (2d ed. 1975). *See* Fed.R.Civ.P. 83. We believe that posting of security for the payment of expenses, including attorney fees, is on no different footing. If we have the power to require the one, even without specific authority under the rules, then we must have the power to require the other. Plaintiff has been unable to cite any authority to dispute this conclusion. We wish to stress that our requirement that plaintiff post security is not a prejudgment of the merits of its case. We keep an open mind. Nor do we wish in any other way to deter plaintiff from pursuing its case to the extent possible. However, the history of this case leaves only one possible conclusion: there is a good chance that defendants will ultimately succeed in proving bad faith. We cannot take the risk that defendants will be unable to recover their expenses should they prove bad faith against the non-resident plaintiff. Therefore, balancing the equities, we feel compelled to require that plaintiff post security for costs and defendants' expenses, including attorney fees.