In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2523

ANTHONY GAY,

*Plaintiff-Appellant*,

*v.*

RAKESH CHANDRA, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 10-336-GPM—**G. Patrick Murphy**, *Judge.*

ARGUED APRIL 24, 2012—DECIDED MAY 30, 2012

Before BAUER, KANNE, and HAMILTON, *Circuit Judges.*

PER CURIAM.    Anthony Gay is a deeply disturbed
Illinois inmate with a long history of self-mutilation. He
has filed many unsuccessful lawsuits against prison staff
and others. He is currently scheduled to be paroled in
the distant year of 2095. In this lawsuit, Gay sued three
mental health professionals at the prison alleging con-
stitutionally inadequate treatment and retaliation for
a prior lawsuit. The district court required him to post

a $1,000 bond — which it knew he could not afford — to cover the defendants' costs if this suit proved unsuccessful. The court required the cost bond without evaluating the merit or lack of merit of Gay's claims in this case. When Gay did not post the bond he could not afford, the court dismissed the case with prejudice. We reverse and remand. District courts have several tools for dealing with indigent litigants who abuse the court system. Requiring a party to post a cost bond that the court knows the party cannot afford, however, is not one of those available tools for dismissing or discouraging frivolous suits.

I. *Factual and Procedural Background*

Gay is an inmate at Tamms Correctional Center in southern Illinois and has a lengthy history of unsuccessful civil rights litigation. Between October 1996 and January 2011, he filed more than 30 civil cases in federal district courts. Gay lost two at trial, settled two more, and lost or withdrew the remainder. At least four were dismissed as frivolous, leading Gay to "strike out" under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g). Unless he is "under imminent danger of serious physical injury," Gay may no longer proceed *in forma pauperis* in federal court. *Id.*

Having struck out under the PLRA, Gay continues to litigate in two ways. One method, which he used in this case, is to start his suit in state court, where the three-strikes limit of the federal PLRA does not apply. In this suit, Gay alleges that Dr. Rakesh Chandra, a psychiatrist

at the prison, increased his dosage of anti-anxiety medication without telling him, and did so to retaliate against him for having sued Dr. Chandra in another case. In the earlier case, Gay had charged that Dr. Chandra was deliberately indifferent to his mental illness, allowing Gay to mutilate himself. Gay also contends in his current suit that Dr. Chandra retaliated further by discontinuing his anti-anxiety medication when he learned that Gay had notified the judge presiding over the earlier case of Dr. Chandra's convictions for fraud and obstruction of justice. (Dr. Chandra has since prevailed in a jury trial in Gay's earlier case; evidence of his convictions was excluded). Finally, in the current suit, Gay also accuses another prison psychiatrist, Dr. Claudia Kachigian, and a social worker, Katherine Clover, of failing to provide adequate mental-health treatment despite knowing that he has a history of self-mutilation. After Gay filed this case in state court, the defendants removed it to federal court.[1]

---

[1] Gay's other litigation method is to invoke the imminent-danger exception to the PLRA. Twice we have remanded cases that district courts had dismissed because Gay had struck out and did not pay the filing fee; we ordered the district courts to determine whether Gay had satisfied this exception. *Gay v. Blackman*, No. 11-1864, ECF Dkt. No. 10 (7th Cir. July 15, 2011); *Gay v. Powers*, No. 11-1400, ECF Dkt. No. 9 (7th Cir. Apr. 15, 2011). In *Powers*, the district court then concluded that Gay had not satisfied the exception. No. 11-1400, ECF Dkt. No. 11 (7th Cir. Feb. 23, 2012). In *Blackman*, the district court has yet to rule. See *Gay v. Blackman*,

(continued...)

After the removal, Judge Reagan screened the complaint. See 28 U.S.C. § 1915A. He dismissed several counts as not sufficiently related to the claims against Dr. Chandra, Dr. Kachigian, and Clover, but allowed the claims against the three of them to proceed. Judge Reagan then transferred the case to Judge Murphy, who recruited an attorney for Gay.

Following these preliminaries, the defendants moved to require Gay to post a bond of $1,000 to cover the costs they could recover under Federal Rule of Civil Procedure 54(d) if they prevailed in the suit. They noted that Gay had failed to pay more than $2,100 in costs assessed after his prior suit against Dr. Chandra, and they argued that his long history of failed litigation made it likely that the district court would award them costs at the end of his new case. The defendants acknowledged Gay's indigence but contended that the court

---

[1] (...continued)
No. 11-14-GPM, ECF Dkt. No. 70 (S.D. Ill. Feb. 2, 2012). In both *Powers* and *Blackman*, the district courts also ordered Gay to show cause why they should not bar him from further filings in their court because of unpaid filing fees. See *Support Systems Int'l, Inc. v. Mack*, 45 F.3d 185 (7th Cir. 1995) (imposing such a bar where prior sanctions had gone unpaid). But neither court has actually imposed a filing bar. In *Blackman*, the court barred him only from alleging self-mutilation to circumvent the PLRA, see No. 11-14-GPM, ECF Dkt. No. 33 (S.D. Ill. May 11, 2011), and in *Powers*, the court has not ruled on whether to impose any bar, see No. 11-20-GPM, ECF Dkt. No. 19 (S.D. Ill. Mar 1, 2011).

should nonetheless impose a bond to "send a message" to Gay that he needed to "exercise discretion and judgment in his litigious activity, accepting the consequences of his costly lawsuits." They asked the court to dismiss the suit without prejudice if Gay failed to pay. Gay opposed the defendants' motion, asserting that his claims could not be frivolous if they survived screening under § 1915A and arguing that he would be denied access to the court if forced to post a $1,000 bond that he could not afford.

The district court granted the motion and ordered Gay to post a $1,000 bond. The court relied on its inherent power to order a bond to secure the payment of future costs, explaining that its authority to award costs implies a power to require a bond. To justify the bond, it emphasized Gay's undeniable status as a "notorious pro se filer" and concluded that his failure to pay costs taxed from the previous suit demonstrated that he "has no concept of financial responsibility at all." The court did not discuss Gay's indigence. Nor did the court assess the possible merits of the case, other than (properly) to reject Gay's argument that, because his claims had survived screening under § 1915A, they could not have been frivolous. Gay moved for reconsideration of the order, this time including an affidavit attesting to his indigence and an inmate trust-fund statement corroborating his claim of poverty. The court denied the motion, again making no mention of Gay's indigence but emphasizing that it had "no opinion whatever about the merits of Gay's claims in this case and in fact knows virtually nothing about them at this early stage

of these proceedings." When Gay failed to post the bond as ordered, the court dismissed the case with prejudice under Federal Rule of Civil Procedure 41(b) for failing to comply with a court order.

## II. *Propriety of the Bond Order*

On appeal Gay contends that the district court abused its discretion by requiring him to post a cost bond that it knew he could not afford. He argues that the bond requirement effectively blocked his access to the courts, a result he asserts is contrary to basic principles of due process. The defendants respond that dismissing a case because the plaintiff failed to post security for costs in the case is no different from barring filings by a plaintiff as a sanction for failing to pay sanctions or court fees in past cases.

We agree with Gay that requiring a plaintiff to post a bond to secure costs in a pending suit is different from sanctioning a litigant for failing to pay costs or sanctions from past suits. As we explain below, before requiring a bond to cover costs under Rule 54(d), a court must consider a party's ability to pay. A court abuses its discretion when it requires a cost bond that it knows the party cannot afford. By contrast, courts can bar *future* suits as a sanction to punish a refusal to pay past court costs and sanctions even if the litigant is indigent. The district court here did not impose a filing bar as a sanction against Gay but invoked only its power to order a bond for costs. The court erred when it ordered Gay to post a bond it knew he could not afford.

The district court correctly reasoned that its authority to award costs to a prevailing party implies a power to require the posting of a bond reasonably calculated to cover those costs, even though no statute or rule expressly authorizes such an order. See *Anderson v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir. 1993) (affirming dismissal); *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1335-36 (11th Cir. 2002) (recognizing inherent authority but vacating order not supported by necessary findings); *Simulnet East Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994) (same); *Ehm v. Amtrak Board of Directors*, 780 F.2d 516, 517 (5th Cir. 1986) (affirming dismissal). A court may require a bond where "there is reason to believe that the prevailing party will find it difficult to collect its costs" when the litigation ends. *Anderson*, 998 F.2d at 496.

Relying on *Anderson*, the defendants contend that Gay's poverty makes it likely that they will be unable to collect their costs at the end of the litigation and therefore justifies the bond requirement in this case. But the defendants' interpretation of *Anderson* would unmoor the bond requirement from its underlying purpose. A cost bond is not a sanction. It is meant "to insure that whatever assets a party *does* possess will not have been dissipated or otherwise have become unreachable by the time such costs actually are awarded." *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir. 1999) (emphasis in original); see also *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1123 (9th Cir. 1987) (rejecting constitutional challenge to rule allowing court to require non-

resident parties to post cost bonds). This understanding of cost bonds has deep historical roots. The practice of requiring such bonds developed to help resident defendants collect costs when victorious against non-resident plaintiffs whose property was beyond the reach of the court. See John A. Gliedman, *Access to Federal Courts and Security for Costs and Fees*, 74 St. John's L. Rev. 953, 958-59 (2000). The practice was imported from English courts, which did not require that an impoverished party post security. *Id.* at 958.

We have never addressed directly whether a court must consider a party's current ability to afford a bond before requiring one as a condition of prosecuting a lawsuit, but the weight of authority from other circuits supports Gay's argument that a court may not ignore an indigent litigant's inability to pay. The First Circuit concluded that a district court abuses its discretion when it does not consider a plaintiff's financial situation before imposing a cost bond. *Murphy v. Ginorio*, 989 F.2d 566, 568-69 (1st Cir. 1993); *Aggarwal v. Ponce School of Medicine*, 745 F.2d 723, 727-28 (1st Cir. 1984). To do otherwise, the court explained, "comes dangerously close to making judicial access a privilege for only the most financially secure." *Murphy*, 989 F.2d at 569. The First Circuit instructs courts to weigh (1) the merits of the case, (2) the prejudice to the defendant of not requiring a bond, and (3) the prejudice to the plaintiff of requiring a bond. *Aggarwal*, 745 F.2d at 727-28.

The Ninth Circuit has cited the *Aggarwal* factors with approval and has cautioned that in imposing a bond, "care

must be taken not to deprive a plaintiff of access to the federal courts." *Simulnet East Assocs.*, 37 F.3d at 575-76. When a court requires a bond it knows a plaintiff cannot pay, the Ninth Circuit reasoned, it is essentially granting judgment to the defendant without allowing the judicial process to run its normal course. *Id.* at 576. And the Second Circuit has also implied that a plaintiff's ability to pay should factor into a court's decision whether to impose a bond. See *Selletti*, 173 F.3d at 111 n.9 (finding no abuse of discretion in imposing bond on plaintiff who did not argue that amount of bond "would effectively preclude compliance"). We agree with the reasoning of these courts, which is not inconsistent with our decision in *Anderson*, where we affirmed dismissal where the plaintiff had made no effort to show that he could not afford to post the required bond. 998 F.2d at 496.

The parties here agree that Gay is indigent and could not post a $1,000 bond. The bond requirement thus did nothing to ensure that the defendants would recoup their costs if they prevailed. All it ensured was the end of Gay's suit. The bond requirement therefore was an abuse of discretion, as was the dismissal order for failure to pay.[2]

---

[2] Even if the bond order itself had not been an abuse of discretion, the dismissal order would still have been improper because the court did not consider Gay's financial situation before dismissing with prejudice. Dismissal under Rule 41(b) is appropriate only when "there is a clear record of delay or contumacious conduct" or when less severe sanctions will

(continued...)

III. *Other Tools for Addressing Frivolous Litigation*

Although Gay's filings in the district court far outnum-
ber his appeals, we understand well the district court's
and defendants' frustration with Gay's pattern of unsuc-
cessful litigation. We share the district court's concern
over the financial burden that Gay's long string of suits
has placed on the defendants, and groundless litiga-
tion makes the courts less accessible to other parties
with more substantive claims and defenses. Federal
courts have a number of means to control vexatious
litigation without resorting to impossible bond require-

---

(...continued)
not suffice. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003),
quoting *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th
Cir. 1998). And while inability to pay a fee imposed in a
pending suit is not an "automatic defense" to dismissal for
failing to pay it, *Williams v. Adams*, 660 F.3d 263, 266 (7th Cir.
2011), a court abuses its discretion when, as here, it fails even
to consider a party's lack of resources before ordering
dismissal, see *id.* at 265-66; *English v. Cowell*, 969 F.2d 465, 473
(7th Cir. 1992); *Selletti*, 173 F.3d at 111; *Moon v. Newsome*, 863
F.2d 835, 838 (11th Cir. 1989); *Hornbuckle v. Arco Oil & Gas
Co.*, 732 F.2d 1233, 1237 (5th Cir. 1984); *Thomas v. Gerber Prods.*,
703 F.2d 353, 356-57 (9th Cir. 1983).

In addition, a court must also consider the probable merits
of the case before dismissing a suit based on a plaintiff's
failure to pay a fee. If the suit has likely merit, then the value
of the suit itself may reduce the need to insist on a separate
payment from the plaintiff. See *Williams*, 660 F.3d at 266. But
by its own account, the district court here never assessed the
merits of Gay's claims.

ments. Some of these means have controlled Gay before but were not available or were not used here. The screening process allows a judge to dismiss, before service on the defendants, a complaint that is frivolous, malicious, or fails to state a claim. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a), (b)(1); see *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003); *Rowe v. Shake*, 196 F.3d 778, 781, 783 (7th Cir. 1999). As has already happened with Gay, a litigant who "strikes out" under the PLRA with three frivolous cases or appeals can be denied the privilege of proceeding without prepaying fees. See 28 U.S.C. § 1915(g). Five of Gay's federal suits have been dismissed for this reason.[3]

The PLRA's three-strikes obstacle does not apply in state courts, where Gay filed this suit. Nevertheless, district courts also can impose both monetary and non-monetary sanctions under Rule 11 for filing or maintaining claims for an improper purpose or without adequate legal or factual support. Fed. R. Civ. P. 11(b), (c); see *Fabriko Acquistion Corp. v. Prokos*, 536 F.3d 605, 609-10 (7th Cir. 2008). A court also can require the submission of verified pleadings, placing the party under penalty of perjury for his assertions. See *In re Tyler*, 839 F.2d

---

[3] See *Gay v. Clover*, No. 3:09-cv-00925-JPG-PMF, ECF Dkt. No. 61 (S.D. Ill. Oct. 4, 2011); *Gay v. Blackman*, No. 11-cv-014-JPG, ECF Dkt. No. 15 (S.D. Ill. Mar. 8, 2011); *Gay v. Powers*, No. 11-20-GPM, ECF Dkt. No. 8 (S.D. Ill. Feb. 5, 2011); *Gay v. Wagoner*, No. 10-cv-128-JPG, ECF Dkt. No. 4 (S.D. Ill. July 13, 2010); *Gay v. Williams*, No. 09-cv-1051-MJR, ECF Dkt. No. 4 (S.D. Ill. June 11, 2010).

1290, 1294 (8th Cir. 1988); *Green v. White*, 616 F.2d 1054, 1056 (8th Cir. 1980). We recognize, though, that these options may have little effect on Gay, who is indigent and is not scheduled for parole until 2095.

As a last resort, when the litigant refuses to pay outstanding fees imposed for abusing the judicial process, either we or a district court can institute a filing bar as a sanction to prevent a plaintiff from bringing *future* suits until he pays the outstanding fines. *Support Systems Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995); *In re Chapman*, 328 F.3d 903, 905 (7th Cir. 2003). We have also imposed a prospective cost bond as part of a comprehensive set of sanctions against another particularly persistent filer of frivolous claims, requiring that plaintiff to post a bond in future cases after affirming the dismissal of one of his frivolous suits. *Sassower v. American Bar Ass'n*, 33 F.3d 733, 736 (7th Cir. 1994).

Here, the district court might have imposed a filing bar as a sanction on Gay because he has not paid the fees and costs imposed on him for his past unsuccessful litigation. We have considered whether the district court's bond requirement, which is invalid because the court did not consider Gay's indigence, could be affirmed as a filing bar, which the court might have imposed as a discretionary sanction for Gay's failure to pay past court debts. We leave it to the district court to decide in the first instance whether Gay's litigation history and refusal to pay outstanding debts justifies the sanction of a filing bar. If the court so decides, it

must carefully craft a bar that is appropriate for this particular party. See *In re Davis*, 878 F.2d 211, 212 (7th Cir. 1989). And even then the bar can apply only to future filings. See *Mack*, 45 F.3d at 186.

The judgment of dismissal is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.